IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BARRY DAMAREVE BRAAN, SR. | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-17-0380 |
| WELLS FARGO HOME MORTGAGE, INC., | * | |
| by its successor by merger, | | |
| WELLS FARGO BANK, N.A., | * | |
| Defendant. | * | |

*****

**MEMORANDUM OPINION**

Pending in this consumer lending case is a motion to dismiss for failure to state a claim filed by Wells Fargo Home Mortgage, Inc., ("Wells Fargo" or "Defendant") as successor by merger to Wells Fargo Bank, N.A. (ECF No. 11). Plaintiff Barry D. Braan, Sr. ("Plaintiff") filed his opposition and moved for leave to amend his Complaint (ECF No. 15). The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following reasons, the Defendant's motion to dismiss is granted in part and denied in part, and Plaintiff's motion to amend is denied.

**I.   BACKGROUND**[1]

Defendant Wells Fargo approved Plaintiff for a military veteran home loan ("VA Loan") in December 2012. Compl., ECF No. 2 at 2. On September 23, 2013, Plaintiff signed a purchase agreement ("the Agreement") to buy the home located at 10520 Beechwood Drive in Waldorf,

---

[1] The facts outlined here are taken from Plaintiff's Complaint, public records, and documents integral to the Complaint attached to Defendant's Motion to Dismiss. The Court may consider documents referenced and integral to the Complaint without converting the motion to dismiss to one for summary judgment. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705; *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Unless otherwise noted, all facts are construed in the light most favorable to Plaintiff as the nonmoving party.

1

Maryland ("the Property") from the United States Department of Housing and Urban Development ("HUD") for $161,000. *Id.* at 3. The Property was being sold as-is. *Id.* at 4.

Plaintiff hoped to take advantage of a program offered by the Maryland Department of Housing and Community Development ("Department of Housing") through which eligible veterans could receive $10,000 in down payment assistance. *Id.* at 2. HUD did not approve the Agreement until the day this program was set to expire—September 30, 2013. *See id.*at 3; *see also* Agreement, ECF No. 11-3 at 2.

Although Defendant told Plaintiff that the application for assistance was submitted on September 27, 2013, Plaintiff's application was not received by the Department of Housing until October 1, 2013, the day after the assistance program expired. Compl., ECF No. 2 at 3. Defendant informed Plaintiff on October 2, 2013 that his application was denied and then offered Plaintiff a 2.00% interest rate on his home loan with the knowledge that Plaintiff would not be receiving the $10,000 in program funds. *Id.* at 3–4. This 2.00% offer was reiterated on October 9, 2013 via a Commitment Letter, contingent on Plaintiff making certain itemized repairs required by Wells Fargo prior to closing. *See* Commitment Letter, ECF No. 11-6 at 2; *see also* Compl,, ECF No. 2 at 4. Plaintiff was also required to secure additional repairs as part of his obtaining the VA Loan. Compl., ECF No. 2 at 4. Plaintiff used $10,000 of his own money to complete the required repairs on a home he did not yet own. *Id.* at 4–5.

On October 18, 2013, Defendant withdrew the 2.00% interest rate offered in the Commitment Letter and told Plaintiff it had applied to HUD on his behalf for $5,000 in closing assistance through another program. Compl., ECF No. 2 at 4. Although Defendant represented that it submitted this application to HUD on October 19, 2013, the application was not submitted

until November 5, 2013. Plaintiff ultimately received $5,000 to put toward his down payment and closing costs. Compl., ECF No. 2 at 3–4.

Leading up to closing, Plaintiff was under "extreme pressure" to "vacate [his] current residence." Compl., ECF No. 2 at 6. On November 11, 2013, Defendant requested from HUD an extension on the closing date to allow re-disclosure of a new interest rate to Plaintiff "due to the expiration of the closing cost assistance program that was initially going to be used." ECF No. 11-7 at 2. At the time of the extension request, Defendant had been aware of the "expiration of the closing cost assistance program" for over a month, and Plaintiff had already undertaken the required repairs on the Property. *See* ECF No. 11-2 at 5 ("[T]he Maryland Homefront Program expired on the date HUD signed the Purchase Agreement and [Plaintiff] was notified of the expiration of that program by Wells Fargo on October 2, 2013."). HUD approved the extension, and closing was set for November 26, 2013—twelve days after the Agreement's initial expiration.

By November 15, 2013, the required repairs were complete. *See* ECF No. 11-9. At closing eleven days later, Defendant for the first time disclosed the new interest rate of 4.25%, more than doubling the initial offered interest rate of 2.00%. Compl., ECF No. 2 at 5. Having made $10,000 in repairs and vacated his prior residence, Plaintiff avers he was left without recourse: he had to close on the Property, sign the mortgage note, and move in. Plaintiff then made timely monthly payments until he paid off the loan in July 2016. *See* ECF No. 11-8.

Based on Defendant's late disclosure of the new, much higher interest rate, Plaintiff filed this action *pro se* on November 23, 2016 in the Circuit Court of Maryland for Charles County, Compl., ECF No. 2, and the action was properly removed to this court on February 10, 2017. ECF No. 1. Liberally construed, the Complaint asserts claims for breach of contract and

violations of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-301 et seq. ("MCPA"), the Maryland Mortgage Fraud Protection Act, Md. Code Ann., Real Prop. § 7–401 et seq. ("MMFPA"), and the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"). Plaintiff avers that Defendant deliberately enticed Plaintiff with an initially low interest rate only to keep Plaintiff on the hook until the day of closing when Defendant then doubled the interest rate. Plaintiff also alleges that Defendant breached the loan agreement when it withdrew the 2.00% interest rate. ECF No. 2 at 4.[2] On February 16, 2017, Defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff's claims are barred by the statute of limitations and, alternatively, by the voluntary payment doctrine. Defendant also argues that Plaintiff has failed to state cognizable claims for relief. ECF No. 11. In response, Plaintiff seeks leave to amend his Complaint. ECF No. 15. The Court will first address Defendant's motion.

## II.   STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). Because Plaintiff is proceeding *pro se*, his Complaint is to be construed liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), but liberal construction does not absolve Plaintiff from pleading plausible claims. See *Holsey v. Collins*, 90 F.R.D. 122,

---

[2] Plaintiff's Complaint is less than clear in this regard. Although Plaintiff avers that Defendant "knowingly and willfully reneged and breached its promise, commitment, obligation and contract," Plaintiff then refers to "various provisions of the Annotated Code of Maryland" to include the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-301 et seq. ("MCPA"), the Maryland Mortgage Fraud Protection Act, Md. Code Ann., Real Prop. § 7–401 et seq. ("MMFPA"). Accordingly, the Court will address Plaintiff's common law breach of contract allegation separate from his MCPA and MMFPA claims.

4

128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Complaint includes several claims that sound in fraud, implicating the heightened pleading standard under Fed. R. Civ. P. 9(b). *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (stating that an MCPA claim that "sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)"). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Under the rule, a plaintiff alleging claims that sound in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Bourgeois v. Live Nation Entm't, Inc.*, 3 F. Supp. 3d 423, 435 (D. Md. 2014) (quoting *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010)).

### III. ANALYSIS

#### A. Statute of Limitations

Defendant first argues that Plaintiff's breach of contract and statutory claims are time-barred because the underlying conduct occurred more than three years prior to the November 23,

5

2016 filing of this case. *See* ECF No. 11-2 at 10–12. Defendant is partially correct. Breach of contract claims are subject to a three-year statute of limitations measured from the date of accrual. In a breach of contract action, the accrual date is ordinarily the date the contract was breached. *Hariri v. Dahne*, 412 Md. 674, 688 n.8 (2010).

Plaintiff acknowledges that limitations on his contract claim began to run on October 18, 2013, when Defendant reneged on its initial interest rate of 2.00%. *See Kumar v. Dhanda*, 198 Md. App. 337, 345 (2011) (purported breach of contract accrued when all elements of cause of action existed), *aff'd sub nom. Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185 (2012). Because Plaintiff filed suit on November 23, 2016, more than three years after accrual, the contract-based claims are barred.

Plaintiff, however, invokes the doctrine of fraudulent concealment in an effort to toll limitations. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-203. A "complaint relying on the fraudulent concealment doctrine must . . . contain specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud." ECF No. 15 at 6 (citing *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 170 (2004)). But Plaintiff has pleaded no facts to support that Wells Fargo concealed the withdrawal of its interest rate. In fact, Defendant's withdrawal of the 2% interest rate struck Plaintiff at the time as "unfair" and in "violation of the law." ECF No. 15 at 6 (emphasis in original); *see Curry v. Trustmark Ins. Co.*, 600 F. App'x 877, 884 (4th Cir. 2015) (finding breach of contract accrued when, by plaintiff's admissions, he believed defendant breached the terms of the insurance policy when it stopped paying him benefits). The doctrine of fraudulent concealment, therefore, cannot save Plaintiff's breach of contract claim.

Plaintiff's TILA claim is also time-barred. TILA requires lenders meaningful disclosure of credit terms to consumers. *Stephens v. Bank of Am. Home Loans, Inc.*, No. 5:16-CV-660-F, 2017 WL 384315, at *4 (E.D.N.C. Jan. 25, 2017) (citing *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980)). Claims for damages under TILA are subject to a one-year statute of limitations unless the doctrine of equitable tolling applies. 15 U.S.C. § 1640(e); *see also Gilbert v. Residential Funding LLC*, 678 F.3d 271, 278 (4th Cir. 2012). Accrual is measured by the date disclosure is required. *McKinney v. Fulton Bank*, 776 F. Supp. 2d 97, 102 (D. Md. 2010). Here, even if the Court gives Plaintiff the latest possible date—the day of closing, November 26, 2013—Plaintiff was required to file his TILA claim by November 26, 2014. Limitations, therefore, has clearly run. Plaintiff's TILA claim must be dismissed.

Plaintiff's MCPA and MMFPA claims, which sound in deceptive lending practices, are a different matter. Plaintiff alleges that Defendant strung him along in the mortgage lending process—delaying the closing, directing Plaintiff to undertake costly repairs on the Property, and failing to submit his assistance applications in a timely manner—only to surprise Plaintiff with a doubled interest rate at closing. The MCPA prohibits "unfair or deceptive trade practices," *see* Md. Code Ann., Com. Law § 13–301, and similarly, the MMFPA prohibits fraud during the mortgage lending process. *See* Md. Code Ann., Com. Law § 7-402.

As pled, Defendant's alleged deceptive practice was inducing Plaintiff to purchase a home at a low interest rate and invest $10,000 of his own money in pre-closing repairs while purposely withholding the actual higher interest rate until the day of closing, when it was too late for Plaintiff to back out of the deal without losing substantial funds. Indeed, Defendant certainly knew of its obligations to disclose the new higher interest rate to Plaintiff because it sought an extension of closing for this very purpose. *See* ECF No. 11-7 at 2. Defendant nonetheless waited

7

until Plaintiff was at the closing table to inform him that his interest rate more than doubled from 2.0% to 4.25%. For limitations purposes, therefore, Defendant's alleged deception was completed on November 23, 2016, when the late disclosure occurred. *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 272 & n.37 (D. Md. 2015) (comparing *Walton v. Network Solutions*, 110 A.3d 756, 767–69 (Md. Ct. Spec. App. 2015) (barring plaintiff's MCPA claims under the statute of limitations because there was only one misrepresentation by the defendant although there was "continuing harm," because "appellant unconvincingly argues that the continuing harm doctrine is applicable" to MCPA actions), with *Fontell v. Hassett*, 891 F. Supp. 2d 739, 741 (D. Md. 2012) (noting that the plaintiff would be permitted to "seek[ ] damages based on [the] Defendants' actions that occurred after June 6, 2007" because any action or misrepresentation made before that date was barred by the statute of limitations)). Because Plaintiff's MCPA and MMFPA claims accrued on the day of closing on November 26, 2013, his filing of this action on November 23, 2016 is timely.

**B.     Sufficiency of the MCPA Claim**

Defendant next argues that even if the MCPA claim is not time-barred, it fails as a matter of law because "Plaintiff admits that he was advised of the actual terms of his Loan prior to entering it, and did so voluntarily." ECF No. 11-2 at 13. Defendant further argues that Plaintiff cannot demonstrate his reliance on any of the purported misrepresentations. The Court disagrees.

Because the MCPA claim sounds in fraud, it is subject to a heightened pleading standard. *Spaulding*, 714 F.3d at 773. Plaintiff must allege (1) an unfair or deceptive trade practice or misrepresentation that is (2) relied upon and (3) causes actual injury. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 143 (2007)),

8

*aff'd sub nom Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). The MCPA further enumerates the categories of unfair or deceptive trade practices, to include:

> (1) [A f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
>
> * * *
>
> (3) Failure to state a material fact if the failure deceives or tends to deceive;
>
> * * *
>
> (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same with . . . [t]he promotion or sale of any . . . consumer realty, or consumer service . . ."

Md. Code Ann., Com. Law § 13–301.[3]

Here, as pleaded, Defendant's misconduct squarely sounds in misrepresentation and material omission. Defendants "knowingly and willfully advertised or offered an enticing low interest rate of 2.00% when it knew that such an interest rate was not available as part of a plan or scheme with the intent not to loan funds at a 2.00% interest rate and later in the loan process switched the interest rate of the loan to 4.25%." ECF No. 2 at 8. Based on these facts, Plaintiff has adequately pleaded the first element of the MCPA claim.

As for the second element, detrimental reliance is met where the misrepresentation substantially induces the consumer's choice. *See Luskin's, Inc. v. Consumer Prot. Div.*, 353 Md. 335, 358–59 (1999); *cf. Nails v. S & R, Inc.*, 334 Md. 398, 416–17 (1994). Here, Plaintiff alleges that Defendant's delayed disclosure of the actual interest rate induced Plaintiff to make the repairs on the property, continue to pursue the purchase, and after having sunk thousands of

---

[3] "Consumer realty" and "consumer service" mean real property and services which are primarily for personal, household, family, or agricultural purposes. C.L. § 13–101(d).

dollars into the endeavor, be left with no choice but to agree to the doubled interest rate at closing. To be sure, Plaintiff has properly alleged that he relied on Defendant's misrepresentations to his detriment.

As to the third element, Defendant argues that Plaintiff has not demonstrated an identifiable loss through his "reasonable reliance" on the seller's misrepresentation. It first bears noting that Plaintiff is not required to prove that his reliance on Defendant's misrepresentation was "reasonable"—all he must prove is reliance. *See Willis v. Bank of Am., N.A.*, No. ELH-13-2615, 2015 WL 5157501, at *21 (D. Md. Sept. 2, 2015) (quoting *Lloyd*, 397 Md. at 142); *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 797 (D. Md. 2013) ( "[T]he Maryland Court of Appeals has yet to hold that reasonable reliance is an element of an MCPA misrepresentation claim despite repeated opportunities to do so." (citing *Hoffman v. Stamper*, 385 Md. 1, 30–32 (2005); *Philip Morris Inc.v. Angeletti*, 358 Md. 689, 753 (2000))). As for loss, here it is ascertainable. Defendant has itemized Plaintiff's losses as "payment of interest on his Loan, the costs of repairs made by him to his home, and his change in residence." ECF No. 11-2 at 15. Plaintiff's claimed damages of pain and suffering are also proper under the MCPA. *Chalk v. PNC Bank, Nat. Ass'n*, No. CCB-11-3052, 2012 WL 2915289, at *3 (D. Md. July 16, 2012) (citing *Green v. N.B.S., Inc.*, 409 Md. 528, 541 (2009)). Accordingly, Plaintiff has properly averred the third element of actual injury, and so his MCPA claim shall proceed.

**C. Sufficiency of the MMFPA Claim**

Plaintiff's MMFPA claim also survives. The MMFPA prohibits the commission of "mortgage fraud," Md. Code Ann., Real Prop. § 7–402, which includes "[k]nowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage

10

lender, borrower, or any other party to the mortgage lending process . . . ." Md. Code Ann., Real Prop. § 7–402(d)(1).[4] The MFPA provides a private right of action "for damages incurred as a result of a violation . . . ." Md. Code Ann., Real Prop. § 7–406(a)(1).

Here, the alleged MFPA violation is Defendant's deliberate misrepresentation of the initial artificially low 2.00% interest rate and deliberate delay in the disclosure of the real 4.25% rate until the day of closing. Plaintiff asserts that Defendant knew it would not honor its initial 2.00% interest rate and offered it merely to induce Plaintiff to proceed with the loan. Further, in the context of fraud in mortgage lending, a sufficiently pleaded MCPA claim may also constitute a violation of the MMFPA based on the same conduct. *See Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC 11-3758, 2013 WL 247549, at *13 (D. Md. Jan. 22, 2013) (citing *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 470 (D. Md. 2013)). Accordingly, Defendant's motion is denied as to the MMFPA claim.

**D. Plaintiff's Request for Punitive Damages**

As to Plaintiff's request for punitive damages, punitive damages are not available under the MCPA. *See Golt v. Phillips*, 308 Md. 1, 12 (1986). While the MMFPA does not explicitly provide for punitive damages, "the court may award [treble] damages equal to three times the amount of actual damages." Md. Code Ann., Real Prop. § 7-406. The Court will liberally construe Plaintiff's request for punitive damages as a request for treble damages as provided under the statute.

---

[4] The "mortgage lending process" encompasses the entire "process by which a person seeks or obtains a mortgage loan," Md. Code Ann., Real Prop. § 7–401(e)(1), including the "solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan," *id.* § 7–401(e)(2)(i), and the "notarizing of any document in connection with a mortgage loan." *Id.* § 7–401(e)(2)(ii). Among other enforcement mechanisms, the MMFPA authorizes a private right of action for damages, attorneys' fees, and treble damages. Id. § 7–406.

**E. Voluntary Payment Doctrine**

Lastly, Defendant argues that Plaintiff's MCPA and MMFPA claims are precluded under the common law "voluntary payment doctrine." Generally, the voluntary payment doctrine prevents one who made voluntary payments under a mistake of law from bringing a common law action for recovery; "[h]e may sue for a return of the money only if the right to recover it is provided for by statute." *Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 646 (2002). In Maryland, this common law principle has most often been applied in the context of mistaken payment of taxes or other government fees. *Id.* (citing *Bowman v. Goad*, 348 Md. 199, 202–04 (1997) (listing cases)).

Importantly, however, the voluntary payment doctrine is not universally applicable. For example, it does not apply where "the common law specifically recognizes an action to recover excess interest which had been voluntarily paid." *Id.* (citing *Williar v. Baltimore Butchers' Loan & Annuity Ass'n*, 45 Md. 546 (1877) (holding that the voluntary payment doctrine does not apply to excess interest payments made to satisfy unethical monetary loans that unfairly enrich the lender)); *see also Robinson v. Fountainhead Title Group Corp. et al.*, 447 F. Supp. 2d 478 (D. Md. 2006) (holding that the voluntary payment doctrine did not bar plaintiff from bringing unjust enrichment claim to recover illegal fees charged by mortgager).

Courts have also declined to apply the voluntary payment doctrine when the debt was induced by fraud and is actionable under consumer protection statutes. This is because to preclude recovery under the voluntary payment doctrine would undermine the legislative purpose in enacting those statutes. *See, e.g.*, *Lee v. Enterprise Leasing Company-West, LLC*, 30 F. Supp. 3d 1002, 1024 (D. Nev. 2014) (holding that to allow defendants to avoid liability for unfair business practices via the voluntary payment doctrine would nullify the legislative purpose

of a Nevada consumer protection statute); *MBS-Certified Public Accountants, LLC v. Wisconsin Bell, Inc.*, 338 Wis. 2d 647 (2012) (declining to apply the voluntary payment doctrine where the complaint properly alleged violations of a Wisconsin statute prohibiting false or deceptive statements with respect to telecommunications services because doing so would undermine the manifest purposes of the consumer protection statute); *Huch v. Charter Commc'ns Inc.*, 290 S.W. 3d 721 (Mo. 2009) (applying Missouri law and declining to apply the voluntary payment doctrine in the consumer protection context because doing so would "improperly allow an equitable doctrine to nullify legislative intent"); *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59 (2007) (applying Washington law and holding that the voluntary payment doctrine has no application where the payment was induced by fraud or in the consumer protection context because consumer protection statutes are to be construed liberally in favor of plaintiffs).

Because Plaintiff has adequately alleged that his debt obligation to Defendant was the result of Defendant's fraudulent inducement, the voluntary payment doctrine is not a bar to Plaintiff's claim at this stage. Furthermore, applying the doctrine in this case would undermine the manifest purpose of the MCPA and MMFPA to protect consumers from deceptive practices in connection with obtaining mortgage loans. Md. Code Ann., Com. Law § 13-102; *see also* Colin E. Flora, *Practitioner's Guide to the Voluntary Payment Doctrine*, 37 S. Ill. U. L.J. 91, 113 (2012) ("The single biggest development in voluntary payment doctrine jurisprudence in decades has been the determination by a handful of courts that the voluntary payment doctrine is inapplicable to bar claims for repayment predicated upon the violation of a consumer protection statute."). Application of the voluntary payment doctrine to claims under the MCPA or MMFPA would improperly allow an equitable doctrine to nullify the goals and intent of the legislature.

*See* Md. Code Ann., Com. Law § 13-105; Md. Code Ann., Real Prop. § 7-404 (the court may order any judgment necessary to restore any money acquired by means of any prohibited practice); *accord Lee*, 30 F. Supp. 3d at 1024 ("[T]o allow Hertz to avoid liability for an unfair pricing practice via the voluntary payment doctrine would nullify the consumer protection purpose of the statute and be contrary to the intent of the Nevada legislature, which explicitly set forth a civil remedy for precisely this type of violation."). The Court, therefore, declines to apply the voluntary payment doctrine to Plaintiff's MCPA and MMFPA claims.

**B. Plaintiff's Motion for Leave to Amend**

Plaintiff requests leave to amend his Complaint "as necessary," ECF No. 15, but Plaintiff fails to provide his proposed amendment. The Court denies Plaintiff's request for leave to amend because the Court cannot ascertain what he seeks to amend.[5] Once Defendant answers the Complaint, the Court will issue a scheduling order with deadlines to amend pleadings. Any amendments must follow Local Rule 103.6, which provides in pertinent part:

> (a) Whenever a party files a motion requesting leave to file an amended pleading, the original of the proposed amended pleading shall accompany the motion. If the motion is granted, an additional copy of the amended pleading need not be filed. The amended pleading shall be deemed to have been served, for the purpose of determining the time for response under Fed. R. Civ. P. 15(a), on the date that the Court grants leave for its filing.
>
> (b) Unless otherwise ordered by the Court, the party filing an amended pleading shall file and serve (1) a clean copy of the amended pleading and (2) a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type.

Local Rule 103.6 (2016).

---

[5] It is unlikely that Plaintiff's breach of contract or TILA claims can be amended to cure the limitations bar. That said, should Plaintiff wish to amend his Complaint to re-plead this claim, he may issue an amended pleading consistent with the Court's to-be- issued Scheduling Order.

Plaintiff is expected to comply with Local Rule 103.6 in the event he submits a proposed amended complaint.

## IV.   CONCLUSION

For the reasons explained above, Defendant's Motion to Dismiss (ECF No. 11) is granted with respect to Plaintiff's breach of contract and TILA claims but denied with respect to Plaintiff's MCPA and MMFPA claims. Plaintiff's Motion for Leave to Amend (ECF No. 15) is denied. A separate order follows.


| _8/3/2017_ | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |